Stephenson, J.
 

 Under the pleadings in this case, at least two decisive questions present themselves, namely: First, abandonment and novation. Second, the statute of frauds.
 

 The testimony of a party to an action necessarily subversive to his interests in the particular action is regarded in all courts as conclusive. This action is based on the alleged contract of July 6,1931, whereby plaintiff was to work for defendants for one year beginning July 15, 1931, at the rate of $375 per month. He was notified, substantially in February, 1932, that he would be placed on a reduced salary. He accepted the reduction without protest. Could he stand on the original contract and at the same time accept a reduction in salary of $150 per month? Did he not by such action indicate to his employers that he was no longer standing on the salary fixed in the original contract, unless “business did continue”?
 

 Plaintiff did remind Klein, the new manager, that he was under ja contract for a year at $375 per month,
 
 *463
 
 but, so far as the record shows, he said nothing to Mr. Ettinger about it, but instead accepted the condition that Ettinger put upon his employment. By word to Klein, plaintiff was standing on the original contract. By action, he was accepting the novation made by Ettinger. Under circumstances of this character, “Actions speak louder than words.” Abandonment is the intentional relinquishment of a known right. A contract will be treated as abandoned when the acts of one party inconsistent with the existence of the contract are acquiesced in by the other party. 6 Ruling Case Law, 929, Section 314.
 

 A party to recover on a contract must stand on its .terms without wavering. If the contract is for personal services for a fixed Wage or salary, and the party for whom the work is being performed tenders a reduced wage or salary, and the other party accepts it, such party'has departed from and abandoned his original contract and has entered upon another. The court could have so found from plaintiff’s testimony in this case, but this phase of the case was not urged.
 

 The statute of frauds was interposed, and the trial court, which was the municipal court, held that defendants, having received the benefit of plaintiff’s work and retained it, were estopped to interpose the statute of frauds, and judgment was accordingly given plaintiff for $1,000. •
 

 Upon the undisputed facts the contract was not in writing, and was not to be performed within a year. The court of common pleas so found, reversed the trial court, and rendered judgment for the defendant.' This judgment was affirmed by the Court of Appeals. Were these courts in error in applying the statute of frauds?
 

 Plaintiff stands squarely on the case of
 
 La Bounty
 
 v. Brumback, 126 Ohio St., 96, 184 N. E., 5, the second paragraph of the syllabus reading as follows: “The plea of partial performance of a contract, in an action at law on such contract, if established by the evidence,
 
 *464
 
 is just as effectual to take the contract out of the Statute of Frkuds today as it was in 1824, when the rule was firsti announced by the Supreme Court of Ohio.
 
 (Wilber
 
 v.
 
 Paine,
 
 1 Ohio, 251, approved and followed.)”
 

 This pronouncement of the law is altogether too broad and sweeping, just as the rule in
 
 Kling, Admr.,
 
 v.
 
 Bordner,
 
 65 Ohio St., 86, 61 N. E., 148, is too narrow. The fifth paragraph of the syllabus in the
 
 Kling case
 
 reads asj follows: “The doctrine of part performance obtains in equity only, and does not avail to render a contract which is void by the statute because unwritten or unsigned, capable of being sued on in a court of law.’?
 

 In that casé, quoting from the opinion at page 103, we find: “The performance relied on to take the agreement out of the statute is the payment of the consideration by the plaintiff, which, although it- consisted of personal services rendered by her, is insufficient.”'
 

 It has been the law in Ohio at all times, and it might be said that the law is universal, that payment of consideration is not alone sufficient to remove a contract from -the operation of the statute of frauds, and, as was said in the
 
 La Bounty case,
 
 the overwhelming weight of authority in the United States outside of Ohio supports the law as announced in the fifth paragraph of the syllabus in the
 
 Kling case,
 
 but the law of Ohio as announced by this court does not go to the full extent of the
 
 Kling case.
 

 Had the contract in the instant case been fully executed, plaintiff’s right to recover would have been absolute; but it was not fully executed. Pomeroy’s Equity Jurisprudence (2d Ed.), Vol. 5, at pages 5001, 5002 and 5003, deals at length with the rationale of the doctrine of part performance. In his text the author goes back to the summary of a judgment in the leading English case,
 
 Maddison
 
 v.
 
 Alderson,
 
 [1883] L. R., 8 App. Cas. (H. of L.), page 467. This opinion
 
 *465
 
 is characterized as a full and able, if not a convincing, exposition of the law.
 

 The English cases confined the doctrine of part performance to verbal contracts for the sale or leasing of lands and settlements made upon consideration of marriage, and at no time extended it to personal contracts. The .gist of the English theory is to the effect that in a suit founded on part performance, the defendant is really charged upon the equities resulting from the acts done in execution of the contract, and not upon the contract itself. Such acts were required to be unequivocal and referable to the contract sought to be established. Possession of real estate, and marriage — being witnessed by unequivocal acts — were brought within the doctrine to the exclusion of all others.
 

 The American cases place the doctrine on a broader ground, as follows: “The ground is equitable fraud; not an antecedent fraud in entering into the contract, but the fraud inhering in the consequence of setting up the statute as a defense.” Pomeroy, Section 2239.
 

 The text, Pomeroy, Section 2240, further states that: “No
 
 distinctively legal action
 
 can be maintained upon an oral contract within the statute of frauds. When the vendor disposes of the property [real estate] to a bona fide purchaser for value, without notice, the vendee may maintain a bill in equity to recover damages from the vendor. The jurisdiction rests upon the ground that equity alone can grant relief.”
 

 Right here is where our troubles with the doctrine of part performance have arisen. It is probably true that no
 
 distinctively legal action
 
 could ever have been maintained in a land where actions at law and suits in equity were at all times kept separate. In the case of
 
 Wilber
 
 v.
 
 Paine, supra,
 
 the petition was for damages on two causes of action, trespass and removal of goods. The remedy of trespass was attacked and the statute of frauds was interposed. This court held then
 
 *466
 
 that trespass did lie and that Shearer’s possession of the real estate took the case out of the statute of frauds.
 

 Damages fo'r trespass and removal of goods are certainly law actions, and both would have been defeated by the statute of frauds but for the interposition of the doctrine of part performance. Whether the court in this case admitted the doctrine of part performance on the ground that the equities in .the case resulted from the actsj done by the parties in the execution of the contract, br on the grounds of equitable fraud, it was admitted and was decisive of the action. The court did not determine the case without research, as it discussed the English cases dealing with the doctrine of part performance.
 

 It will further be borne in mind that this case was decided long before the distinction between legal and equitable causes of action had been abolished. A doctrine of equity was injected into what would ordinarily have been denominated an action at law, and it was decisive of the case. Under such circumstances, was the case of
 
 Wilber
 
 v.
 
 Paine, supra,
 
 an action at law or a suit in equity?
 

 It matters : little now, since the distinctions have been abolished and legal and equitable causes may be joined in the same action.
 

 As was said in effect, and well said, by Jones, J., in the case of
 
 Bumiller
 
 v.
 
 Walker,
 
 95 Ohio St., 344, at page 350, 116 N. E., 797, L. R. A., 1918B, 96, that the statute of frauds cannot be permitted to legalize a fraud it was intended to suppress. It cannot be made a shield and protection for injustice.
 

 As heretofore stated, the courts of England and our own country have consistently held that the acts relied on to take a case out of the statute of frauds must be
 
 unequivocal,
 
 and because of the inducement to litigants in close cases to equivocate, the doctrine of part performance waá restricted to cases involving the sale or
 
 *467
 
 leasing of real estate, wherein there had been delivery of possession and settlements made upon consideration of marriage, followed by actual marriage. Possession of real estate and actual marriage being so fixed and decidedly unequivocal as to practically admit of no denial, pleas of part performance in such cases were entertained.
 

 It is our holding in this case that the doctrine of part performance can be invoked in Ohio, to take a ease out of the statute of frauds, only in cases involving the sale or leasing of real estate, wherein there has been a delivery of possession of the real estate in question, and in settlements made upon consideration of marriage followed by actual marriage. Such doctrine has no place in the law governing contracts for personal services.
 

 The second paragraph of the syllabus in the case of
 
 La Bounty
 
 v.
 
 Brumback,
 
 126 Ohio St., 96, 184 N. E., 5, is limited, and the fifth paragraph of the syllabus in the case of
 
 Kling Admr.,
 
 v. Bordner, 65 Ohio St., 86, 61 N. E., 148, is extended, to conform to the opinion herein.
 

 We find no error in the judgment of the Court of Appeals, and it is hereby affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Jones, Matthias, Bevis and Zimmerman, JJ., concur.