COBURN et al., Appellants,

v.

AUTO–OWNERS INSURANCE COMPANY et al., Appellees.

[Cite as *Coburn v. Auto–Owners Ins. Co.,* 189 Ohio App.3d 322, 2010-Ohio-3327.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–923.

Decided July 15, 2010.

324

**326**

Scott Elliot Smith, L.P.A., and Scott Elliot Smith, for appellant Gregory Coburn.

Weston Hurd, L.L.P., and Steven G. Carlino, for appellee Auto–Owners Insurance Company.

Lane Alton & Horst, L.L.C., and Thomas J. Keener, for appellee Gianna M. Domine.

John C. Cahill, for appellee Donald Kleinhenz.

_____

PEGGY BRYANT, Judge.

{¶ 1} Plaintiff-appellant, Gregory Coburn, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motions of defendants-appellees, Donald Kleinhenz, Gianna M. Domine, and Auto–Owners Insurance Company ("Auto–Owners"). Because the trial court erred in granting summary judgment to Kleinhenz, rendering potentially pertinent other rulings that the trial court deemed moot, we reverse in part.

## I. Facts and Procedural History

{¶ 2} On December 31, 2006, at approximately 3:15 p.m., Coburn was driving his Toyota Camry south on Riverside Drive, or State Route 257, north of the Columbus Zoo. At the same time, Kleinhenz was driving a Honda Accord north. Kleinhenz drove left of the center line and struck plaintiff's vehicle. Domine was traveling directly behind Kleinhenz in a Honda CR–V. Although she struck Kleinhenz's vehicle as it sat in the northbound lane, she did not hit Coburn's vehicle.

{¶ 3} Coburn filed a complaint on October 17, 2008, against Anthem Blue Cross and Blue Shield, Auto–Owners, Kleinhenz, Domine and her father, and several John Does. Coburn sought (1) damages for personal injury arising from the automobile accident and (2) a declaratory judgment against Auto–Owners and Anthem Blue Cross & Blue Shield regarding the parties' rights under the policies of insurance. Inter-party pleading as well as lengthy and complicated discovery followed, leading to dismissed parties and dispositive motions.

{¶ 4} Pursuant to Civ.R. 41(A), Coburn dismissed his claims and causes of action against Anthem Blue Cross and Blue Shield, his uninsured/underinsured-motorist claim against Auto–Owners, his claims, cross-claim and counterclaim against Domine's father, and his punitive-damages claim against Kleinhenz. Over the course of approximately six months, a number of dispositive motions also were filed:

- Coburn filed a motion for summary judgment against Kleinhenz on December 26, 2008.
- On March 27, 2009, Auto–Owners filed a motion for summary judgment on its counterclaim against Coburn, asserting that Auto–Owners was entitled to full reimbursement from Coburn if he obtained a verdict against the alleged tortfeasors.

- Coburn filed a motion for summary judgment against Domine and a motion for apportionment of liability among the defendants on April 16, 2009.

- Kleinhenz filed a motion for summary judgment on April 20, 2009, alleging that Coburn had signed an agreement and release.

- Auto–Owners supplemented its motion for summary judgment on April 24, 2009, alleging that when Coburn signed the release without Auto–Owners' consent, he prejudiced Auto–Owners' right to subrogation.

- Coburn filed a motion for partial summary judgment, asking the trial court for both a determination that *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362[, 857 N.E.2d 1195], does not apply and a protective order to preclude defendants from further discovering his medical contractual write-offs under his health-insurance contract.

- On May 5, 2009, Domine filed a motion for summary judgment.

- Coburn filed a cross-motion for summary judgment against Auto–Owners.

{¶ 5} On August 25, 2009, the trial court journalized an entry after holding a status conference on July 21, 2009. The trial court expressed concern over the number of filed motions, 22 at that point, including seven summary-judgment motions. The court prohibited the parties from filing any new motions and advised that any issues that the parties could not resolve among themselves should be brought to the court's attention.

{¶ 6} The trial court subsequently issued three separate decisions: one granted Kleinhenz's summary-judgment motion, the second granted summary-judgment to Domine, and the third granted Auto–Owners' summary-judgment motion; the trial court denied Coburn's motions for summary judgment against Kleinhenz, Domine, and Auto–Owners. In a separate decision and entry, the trial court denied as moot Coburn's three motions to compel discovery, Auto–Owners' motion for protective order, Coburn's motion for partial summary judgment regarding *Robinson v. Bates,* and Kleinhenz's motions to compel discovery and in limine. Coburn appeals.

## II. Assignments of Error

{¶ 7} On appeal, Coburn assigns the following errors:

I. The court erred in prohibiting the parties from filing any document with the clerk of courts as set forth in its journal entry of August 25, 2009.

II. The court erred in granting defendant Donald Kleinhenz's motion for summary judgment, filed April 20, 2009.

III. The court erred in granting defendant Gianna Domine's motion for summary judgment, filed May 5, 2009.

IV. The court erred in denying plaintiff's motion for summary judgment against defendant Donald Kleinhenz, filed December 26, 2008.

V. The court erred in denying plaintiff's motion for summary judgment against defendant Gianna Domine, filed April 16, 2009.

VI. The court erred in denying as moot plaintiff's motion to compel discovery, filed April 9, 2009.

VII. The court erred in denying as moot plaintiff's motion to compel discovery, filed June 17, 2009.

VIII. The court erred in denying as moot plaintiff's motion to compel discovery, filed July 10, 2009.

IX. The court erred in denying as moot plaintiff's motion for partial summary judgment regarding *Robinson v. Bates* and motion for a protective order, filed April 29, 2009.

X. The court erred in granting defendant/involuntary plaintiff Auto–Owners Insurance Company's motion for summary judgment, filed March 27, 2009.

XI. The court erred in denying plaintiff's cross-motion for summary judgment against defendant/involuntary plaintiff Auto–Owners Insurance Company, filed July 7, 2009.

For ease of discussion, we address the assignments of error out of order, all of which challenge the trial court's determinations of the parties' summary-judgment motions.

{¶ 8} An appellate court's review of summary judgment is conducted under a de novo standard. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327; *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the parties moving for summary judgment demonstrate that (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 677 N.E.2d 343.

{¶ 9} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R.

56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. Id.; *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E). See also *Castrataro v. Urban* (Mar. 7, 2000), 10th Dist. No. 99AP–219, 2000 WL 254315.

## III. Second and Fourth Assignments of Error—Release from Liability

{¶ 10} Coburn's second and fourth assignments of error contend that the trial court erred when it both granted Kleinhenz's summary-judgment motion and denied his summary-judgment motion against Kleinhenz. In granting summary judgment to Kleinhenz, the trial court determined that Coburn had released Kleinhenz from liability when, shortly after the accident, he signed a release with Kleinhenz's insurer, Nationwide Mutual Insurance Company.

{¶ 11} In response to Coburn's summary-judgment motion, Kleinhenz submitted the affidavit of Debbie Vandyne–Elliott, an insurance adjuster at Nationwide, who was initially assigned Coburn's claim. In early January 2007, several days after the accident, she met with Coburn, who signed an agreement and release on January 4, 2007. She delivered two settlement checks to Coburn, one for $2,189.60 and one for $2,717.88, both of which Coburn cashed. Kleinhenz argued that since Coburn signed a release and accepted settlement money, he is barred from pursuing his claim against Kleinhenz, particularly because Coburn failed to return the settlement money before attempting to challenge the release.

{¶ 12} Coburn responded that Kleinhenz and Nationwide had abandoned the release and initiated a new offer to Coburn. To support his contentions, Coburn filed the deposition of Constance Johnson, a special claims representative with Nationwide, who testified that Coburn's file was closed after the settlement and release in January 2007. Nevertheless, after a telephone call from a member of Coburn's family informing Nationwide of Coburn's brain hematoma and surgery, Johnson reopened the file, reviewed earlier records regarding Coburn's injury, and requested that a Nationwide staff nurse review the records. The nurse determined the further injuries and complaints were related to the accident.

{¶ 13} Although Johnson knew that Coburn had signed a release, she made a new offer to Coburn's attorney. She offered $50,000, offset by the money paid under the initial release, and payment of Coburn's medical bills, less any reduction under *Robinson v. Bates*. She stated that in her inclusive offer she had no intention of preserving the release and settlement defenses, but rather felt the need to honor Coburn's claim. In her deposition, she reiterated that the offer

included the money Coburn had already received, with Nationwide receiving credit against its more recent offer for payments made under the initial offer and release.

{¶ 14} Citing *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 13, 552 N.E.2d 207, the trial court concluded that Coburn's signed release was an absolute bar to his later cause of action for any claim included in the release. The trial court determined (1) that the parties did not make a mutual mistake as to the terms of the release as it applied to future injuries, (2) that Kleinhenz did not abandon the release, and (3) that Coburn granted Kleinhenz an accord and satisfaction of any claims when Coburn deposited the checks.

### A. Mutual Mistake

{¶ 15} In the second syllabus of *Haller*, the Supreme Court of Ohio held that one who signs a release may not attack the validity of the release for fraud in the inducement unless he or she first tenders the consideration received in exchange for the release; a tender is unnecessary if fraud in factum is alleged. Coburn is not attacking the release on the grounds of fraud, either in the inducement or in factum, but on grounds of mutual mistake and abandonment. *State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.* (1997), 79 Ohio St.3d 216, 680 N.E.2d 993 (allowing a party to a contract to rescind the contract when the agreement is based on a mutual mistake of law or fact).

{¶ 16} Courts generally do not require a tender of consideration when a release is set aside on the grounds of mutual mistake. In *Pizzino v. Lightning Rod Mut. Ins. Co.* (1994), 93 Ohio App.3d 246, 638 N.E.2d 146, the insured was involved in a motor-vehicle accident with an uninsured motorist. Within two days of the accident, her insurance adjuster visited her home. During the course of resolving her claim, she met with the adjuster three times and spoke with him telephonically several times. The insured ultimately signed a release but then learned that she suffered a herniated disk as result of the accident. The trial court refused to set aside the release on the basis of fraud in the inducement, noting that the insured did not tender the payment she received in exchange for executing the release. The Eighth District Court of Appeals, relying on *Harchick v. Baio* (1989), 62 Ohio App.3d 176, 574 N.E.2d 1160, determined that the insured was not required to tender payment made in order to set aside the release on the grounds of mutual mistake. See also *Carnes v. Downing* (Sept. 27, 2000), 3d Dist. No. 8–2000–12, 2000 WL 1420279.

{¶ 17} *Harchick*, on which *Pizzino* relied, concluded mutual mistake is a full defense to a release if the parties did not intend to relinquish all future claims. 62 Ohio App.3d at 180, 574 N.E.2d 1160, citing *Sloan v. Std. Oil Co.* (1964), 177 Ohio St. 149, 29 O.O.2d 355, 203 N.E.2d 237, paragraph one of the syllabus.

*Harchick* listed factors to be considered in determining the parties' intent when the release was executed, including " '[1] [t]he absence of bargaining and negotiating leading to settlement; [2] the releasee is clearly liable; [3] absence of discussion concerning personal injuries; [4] the contention that the injuries were in fact unknown at the time the release was executed is reasonable; [5] an inadequate amount of consideration received compared with the risk of the existence of unknown injuries * * *; [6] haste by the releasee in securing the release * * *; and [7] the terms of the release exclude the injuries alleged.' " Id. at 181, quoting *Sloan* at 153. The court noted that whether the parties intended the release to bar all future claims may create a factual dispute for the trier of fact to resolve. *Harchick*, 62 Ohio App.3d at 180, citing *Sloan*; and *Prada v. Nationwide Mut. Ins.* Co. (Dec. 2, 1982), 8th Dist. No. 44809, 1982 WL 2568.

{¶ 18} The record presents a genuine issue of material fact as to whether the parties were mutually mistaken in entering into the release: (1) the record discloses little discussion, as the parties met only once, (2) Kleinhenz admits liability, (3) any discussion regarding personal injuries was limited to those apparent shortly after the accident, (4) the parties do not dispute that neither party was aware at the time of the release was executed that Coburn had a hematoma, as it was not discovered until March 2007, (5) the amount of money paid with the release was minimal in light of the nature of the accident and the resulting injuries, (6) the release was executed only four days after the accident, and (7) the release excludes the injuries alleged in Coburn's complaint. Only the last factor supports enforcing the release.

{¶ 19} Although all but one of the elements of mutual mistake suggest a mutual mistake, the trial court found no mutual mistake, determining that plaintiff had failed to present evidence to support his contentions regarding his lessened mental capabilities. Coburn, however, submitted evidence that he experienced memory loss following the accident; he did not remember discussions regarding settlement and could not remember when he returned to work without reference to work records. Coburn also submitted the affidavit of Jeffrey D. Madden, Ph.D., a neuropsychologist. He opined that four days following the collision, Coburn "was suffering from the effects of the traumatic brain injury he sustained when striking his head upon the windshield of his vehicle as a result of the head-on collision on December 31, 2006." Dr. Madden concluded "to a reasonable degree of psychological probability that Mr. Coburn was not fully capable of proper and effective reasoning and analysis at that time due to anterograde amnesia resulting from the injury to the brain." Based on Dr. Madden's opinion, Coburn argues that he presented sufficient evidence to

create an issue of fact concerning whether he was capable of signing the release with proper and effective reasoning.

{¶ 20} The trial court rejected Dr. Madden's affidavit for two reasons. Initially, the trial court concluded that the neuropsychologist's affidavit was not credible because Dr. Madden had no in-person contact with Coburn and was not a licensed medical doctor. Secondly, the court determined that Dr. Madden did not directly assert that Coburn was mentally incompetent; instead, he opined that Coburn was "not fully capable of proper and effective reasoning and analysis."

{¶ 21} The trial court erred in determining the credibility of the neuropsychologist's affidavit on summary judgment. When resolution of the factual dispute depends at least in part on the credibility of the parties or their witnesses, summary judgment is inappropriate. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123. Moreover, complete mental incompetency is not necessary to conclude that plaintiff lacked the mental wherewithal to enter into an agreement releasing Kleinhenz from all liability. Cf. *Losh v. Winters Natl. Bank & Trust Co.* (1942), 37 Ohio Law Abs. 204, 46 N.E.2d 443 (noting that the ability to understand the transaction is the critical issue). The neuropsychologist's opinion that plaintiff was not fully capable of proper and effective reasoning and analysis creates an issue of fact that bears on the issue of mutual mistake. It, coupled with the other factors from *Harchick*, creates an issue of material fact that precludes summary judgment.

B. Abandonment

{¶ 22} A release is a contract. *Elliott v. Ganley Dodge, Inc.*, 8th Dist. No. 84970, 2005-Ohio-1991, 2005 WL 991710, ¶ 19. "Parties who have entered into a contract may, by mutual consent or conduct, abandon the contract which they have entered into." *Hunter v. BPS Guard Servs., Inc.* (1995), 100 Ohio App.3d 532, 541, 654 N.E.2d 405. Abandonment is "the intentional relinquishment of a known right." *Hodges v. Ettinger* (1934) 127 Ohio St. 460, 463, 189 N.E. 113. A contract will be treated as abandoned when one party acquiesces in the acts of the other party that are inconsistent with the existence of the contract. Mutual abandonment thus can be inferred from the conduct of the parties and the surrounding circumstances; it need not be express. "Where one party effectively abandons a contract, the other party may accede to the abandonment and, in effect, the contract is dissolved by the mutual assent of both parties. In such a case, the parties are restored to their original positions and neither party may sue for breach of the contract, nor compel specific performance." *Hunter* at 541, citing *Hodges* and *Bryant v. Richfield Properties* (Sept. 5, 1990), 9th Dist. No. 14533, 1990 WL 129237.

{¶ 23} The evidence here reveals a genuine issue of material fact regarding abandonment of the release. Johnson, a special claims representative with Nationwide, testified that after a telephone call from a member of Coburn's family informing Nationwide of Coburn's brain hematoma and surgery, she had no intention of preserving the release and settlement defenses, made a new offer and intended to take, within her offer, a credit for payments already made. Johnson's testimony creates a genuine issue of material fact not only as to whether the release was abandoned but also whether Coburn needed to tender back the consideration.

{¶ 24} The trial court, however, concluded that the record contained no allegation or evidence that Kleinhenz had abandoned the release or acquiesced in Coburn's apparent abandonment of the release. At best, Kleinhenz argues, Nationwide abandoned it, not he. The insurance contract between Kleinhenz and Nationwide provides that Nationwide will defend Kleinhenz, at Nationwide's expense and with attorneys of Nationwide's choosing, in any suit filed against Kleinhenz. The parties all agree that the contract between Nationwide and Kleinhenz was effective at the time of the December 31 collision. As Kleinhenz's insurer, Nationwide acted on his behalf in attempting to resolve the results of the accident. To the extent that Nationwide could resolve the claim, it likewise could abandon the resolution. Accordingly, genuine issues of material fact make summary judgment inappropriate regarding the issue of abandonment.

C. Accord and Satisfaction

{¶ 25} Apart from abandonment and mutual mistake, Kleinhenz also contends, and the trial court agreed, that the affirmative defense of accord and satisfaction discharges the debt. "Accord and satisfaction is an affirmative defense to a claim for money damages"; if proven, it discharges the defendant's debt as a matter of law. *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 231, 611 N.E.2d 794.

{¶ 26} An accord is a contract between a debtor and a creditor by which the claim is settled for a sum other than the amount allegedly due. "Four elements must be present to have an accord and satisfaction: proper subject matter, competent parties, mutual assent, and consideration." *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes* (1983), 7 Ohio St.3d 7, 8, 7 OBR 318, 455 N.E.2d 489. An accord and satisfaction "cannot be consummated unless the creditor accepts the lesser amount with the intention that it constitutes a settlement of the claim." *Id.* Two safeguards are built into the doctrine of accord and satisfaction: (1) the parties must have a good-faith dispute about the debt and (2) the creditor must be given reasonable notice that the payment was intended as full satisfaction of the alleged debt. *Allen.* The trial court concluded

that a good-faith dispute existed between the parties at the time the release was signed.

{¶ 27} In *Allen*, the Supreme Court of Ohio addressed accord and satisfaction and, in particular, when the facts demonstrate a genuine issue as to whether a bona fide dispute exists. As the court explained, in a tort case "some sort of claim, demand, or request by the injured party for compensation from the tortfeasor is essential to create a *bona fide* dispute which can be settled by an accord and satisfaction." Id. at 235, 611 N.E.2d 794. "In light of the importance of this safeguard, there is a *bona fide* dispute, in a tort case, only if the injured party has expressly asked the alleged tortfeasor for compensation of some sort for his or her injury." Id. at 232.

{¶ 28} The complaint in *Allen* alleged that the defendant negligently caused a traffic accident in which the plaintiff was injured. Approximately two weeks after the accident, the defendants' insurance agent telephoned the plaintiff and advised the plaintiff that he would be receiving a check for his hospital bill and lost wages. At that time, the plaintiff had not asserted any claim against the insurance company or the defendants for compensation for his injuries arising out of the accident. Plaintiff received the check, endorsed it, and cashed it. The court held under those facts that whether the parties had a bona fide dispute was a genuine issue of material fact. Similarly, here, Nationwide approached Coburn four days after the accident; no party presented evidence indicating that Coburn had made a claim to Nationwide before the checks were presented to him. A genuine issue of fact remains as to whether a bona fide dispute existed between the parties here.

{¶ 29} Because genuine issues of material fact exist regarding the continued viability of the release, the trial court erred in granting summary judgment to Kleinhenz but correctly denied Coburn's motion for summary judgment against Kleinhenz. Coburn's second assignment of error is sustained, and his fourth assignment of error is overruled.

## IV. Third and Fifth Assignments of Error—Domine's Liability

{¶ 30} Coburn's third assignment of error contends that the trial court erred in granting Domine's motion for summary judgment; his fifth assignment of error asserts that the trial court erred in overruling his motion for summary judgment against Domine. Coburn contends that Domine negligently struck the Kleinhenz vehicle and caused his injuries.

{¶ 31} To establish negligence, Coburn was required to prove by a preponderance of the evidence that Domine owed him a duty of care, that she breached that duty, and that the breach proximately caused his injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 423 N.E.2d 467. Coburn

asserts that Domine was negligent in failing to maintain an assured clear distance ahead as R.C. 4511.21(A) requires. The parties' dispute, however, revolves around proximate cause, because Domine hit Kleinhenz's car, not the one Coburn was driving. Addressing that point, Coburn contends that the two collisions occurred simultaneously, constitute concurrent negligence that jointly caused Coburn's injuries, and render both Kleinhenz and Domine liable to him. Contrary to Coburn's contentions, the evidence does not indicate that the collisions occurred simultaneously.

{¶ 32} Coburn could not remember anything between the time he saw Kleinhenz's vehicle driving left of the center line and the time he stood on the side of the road after the accidents. Kleinhenz testified that he did not think the impact from Domine's vehicle was simultaneous with his hitting Coburn's car but believed it was "pretty quick," initially estimating one to two seconds between the collisions and later clarifying a two-second gap between the two collisions. As Kleinhenz explained, his car had come to a stop before Domine's vehicle struck it; the impact from Domine's vehicle had nothing to do with his going left of the center line, and he admitted that he was responsible for his collision with Coburn's vehicle. The evidence in the record indicating that Kleinhenz's air bag had deployed at the time Domine hit him supports Kleinhenz's impression that the collisions were not simultaneous.

{¶ 33} Domine also testified that the collisions did not occur simultaneously. She stated that her car struck Kleinhenz's vehicle while it was in the northbound lane; she did not drive left of the center line. She further testified that at the time she struck Kleinhenz's vehicle, it was stopped and Coburn's vehicle was already in the ditch on the side of the road, meaning that Kleinhenz's and Coburn's vehicles were not touching at the time she hit Kleinhenz's car. According to Domine, 10 to 15 seconds separated the two collisions.

{¶ 34} The last witness speaking to the timing of the two collisions was the passenger in Kleinhenz's vehicle, Patrick Raney, whose affidavit was attached to Coburn's motion for summary judgment. He stated that "[a]lmost simultaneously to hitting the southbound car I could feel our car was being hit from behind which later turned out to be a young girl who was driving a black Honda CRV." Raney's affidavit does not support Coburn's contention that the collisions were simultaneous, but instead is consistent with the other testimony that Domine's car struck Kleinhenz's automobile within seconds of the first collision.

{¶ 35} Because the parties presented no evidence that Domine's vehicle hit Coburn's car, caused Kleinhenz's vehicle to go left of the center line and hit Coburn's car, or simultaneously hit Kleinhenz's vehicle so as to be concurrently negligent, the evidence likewise fails to indicate that Domine proximately caused any injury to Coburn. The trial court did not err in granting Domine's motion

for summary judgment and denying Coburn's motion for summary judgment. Coburn's third and fifth assignments of error are overruled.

## V. Tenth and Eleventh Assignments of Error—Auto–Owners Recovery

{¶ 36} Coburn's tenth assignment of error contends that the trial court erred in granting Auto–Owners' motion for summary judgment; his eleventh assignment of error asserts that the trial court erred in denying his motion for summary judgment against Auto–Owners. The pertinent language of Auto–Owners' insurance policy with Coburn provides that if Auto–Owners makes "a payment under this endorsement and the person to whom payment is made has a right to recover damages from another," Auto–Owners "will be entitled to that right. That person shall do everything necessary to transfer that right to us and shall do nothing to prejudice it."

{¶ 37} Based on the language of its policy, Auto–Owners filed a counterclaim against Coburn. Auto–Owners asserted, to the extent of any payments made to or on behalf of Coburn, that it had either a subrogation claim or a contractual right to full reimbursement for the $5,000 in medical payments Auto–Owners paid Coburn under the policy. Auto–Owners sought summary judgment on its counterclaim, but when Auto–Owners learned that Coburn had signed a release with Nationwide, Auto–Owners filed a supplement to its motion for summary judgment, alleging that Coburn had prejudiced Auto–Owners' subrogation rights when he signed the release without Auto–Owners' consent.

{¶ 38} In response, Coburn admitted that the policy is a binding contract, that it was in effect at the time of the accident, and that Auto–Owners paid him medical-payment limits of $5,000. Coburn nonetheless argued that to recover, Auto–Owners had to prove the money was used to pay medical bills proximately related to the accident. The trial court rejected Coburn's argument, concluding that Coburn impliedly certified that the medical bills he submitted were proximately related to the accident, as Coburn knew he would commit fraud under R.C. 3999.21 if the bills were not. Accordingly, the trial court granted Auto–Owners' motion for summary judgment, holding that judgment would be entered in the amount of $5,000 when, and if, (1) Coburn settled with the other defendants without obtaining Auto–Owners' approval or (2) Coburn received payments from the alleged tortfeasors in a judgment arising from this case.

{¶ 39} In *Clark v. Auto–Owners Mut. Ins. Co.*, 10th Dist. No. 05AP–751, 2006-Ohio-2436, 2006 WL 1351506, this court initially determined that a third-party beneficiary who accepted medical payments under a policy assumed the burdens of the subrogation clause. Id. at ¶ 8. We next concluded that the "make whole" doctrine, as expressed in *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 388, 18 OBR 440, 481 N.E.2d 272, did not apply when the beneficiary

interfered with the insurer's subrogation rights by entering into a settlement without the insurer's approval. *James* at 388, 18 OBR 440, 481 N.E.2d 272 (stating that "where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek setoff from the limits of its coverage *until the insured has been fully compensated* for his injuries" [emphasis sic]).

{¶ 40} Coburn argues that *Clark* does not apply, because the case involved an insured who interfered with the insurer's subrogation rights. By contrast, he argues, he has not interfered with Auto–Owners' subrogation rights. Because we determined that the evidence reveals a genuine issue of material fact regarding whether Coburn released Kleinhenz and his insurer, we cannot at this juncture determine whether Coburn jeopardized Auto–Owners' rights. The trial court, however, held that if Coburn either settles with the alleged tortfeasors without Auto–Owners' consent and in that way interferes with Auto–Owners' subrogation rights or he receives payments from a judgment arising from this case, then judgment would be entered for Auto–Owners in the amount of $5,000 against Coburn. The trial court thus did not misapply *Clark* but provided for the possibility that Clark applied to these facts.

{¶ 41} Coburn also asserts that if he is deemed to have settled the case, Auto–Owners had no legal obligation to pay him after the case was settled, making Auto–Owners a volunteer. The right of subrogation does not extend to a mere volunteer but only to one who is obliged to pay the debt of another. *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn.* (1993), 66 Ohio St.3d 209, 213, 611 N.E.2d 313. Because the validity of the release poses a genuine issue of fact regarding Coburn's volunteer argument, the trial court prematurely granted Auto–Owners' summary-judgment motion. Coburn's tenth and eleventh assignments of error are sustained to the limited extent indicated.

## VI. Ninth Assignment of Error—*Robinson v. Bates*

{¶ 42} Coburn's ninth assignment of error contends that the trial court erred in denying as moot his motion for a protective order and his motion for partial summary judgment regarding *Robinson v. Bates,* 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195.

{¶ 43} Coburn filed a motion for partial summary judgment seeking a determination that *Robinson v. Bates* does not apply here; he also filed a related motion for a protective order seeking to preclude Kleinhenz from further discovering the medical contractual write-offs under his health-insurance contract. Because the trial court granted Kleinhenz's motion for summary judgment, the trial court concluded that Coburn's motions were moot.

{¶ 44} Initially, summary judgment is not appropriate to resolve the issue under *Robinson v. Bates* as Coburn has posed it. The question before the court is whether documents are subject to discovery or admissible at trial; it is not a legal claim, cross-claim, or right of recovery or declaratory judgment that can be decided through summary judgment. Civ.R. 56. Coburn's motion for partial summary judgment was properly denied.

 {¶ 45} Coburn's motion for a protective order seeks to prohibit Kleinhenz from discovering the amount the insurance company actually paid for the medical bills, or the write-offs. "A 'write-off' is the difference between the original amount of a medical bill and the amount accepted by the medical provider as the bill's full payment." *Robinson v. Bates* at ¶ 10.

 {¶ 46} In personal-injury cases, an injured party is entitled to recover necessary and reasonable expenses arising from the injury, including the reasonable value of the medical care required to treat the injury. Write-offs raise the question of how to determine the reasonable value of the medical care, and they invoke consideration of the collateral-source rule. See *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235 (defining the rule as preventing the jury from learning about a plaintiff's income from a source other than the tortfeasor so that a tortfeasor is not given an advantage from third-party payments to the plaintiff). The General Assembly subsequently addressed the rule in R.C. 2315.20, effective April 7, 2005, providing, "In any tort action, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury, death, or loss to person or property" subject of the claim on "which the action is based, except if the source of collateral benefits has a mandatory self-effectuating federal right of subrogation, a contractual right of subrogation, or a statutory right of subrogation."

{¶ 47} In *Robinson v. Bates*, the Supreme Court addressed the collateral-source rule. *Robinson v. Bates* determined that the reasonable value of medical services is a matter for the jury to determine from all the relevant evidence, and both the original medical bill and the amount accepted as full payment are admissible to prove the reasonable value of medical services. Because R.C. 2315.20, passed after the incident at issue in *Robinson v. Bates*, did not apply to the facts before it, the Supreme Court did not address the statute's effect. The Supreme Court, however, recently had the opportunity to address the collateral-source rule in the context of R.C. 2315.20 and determined that R.C. 2315.20 does not pertain to evidence of write-offs of medical providers, so the holding in *Robinson v. Bates* controls. *Jaques v. Manton,* 125 Ohio St.3d 342, 2010-Ohio-1838, 928 N.E.2d 434.

{¶ 48} The trial court here did not rule on the *Robinson v. Bates* issue, since it granted summary judgment to Kleinhenz. Because an issue of fact renders summary judgment to Kleinhenz improper, the matter will be returned to the trial court, where the trial court will need to consider the *Robinson v. Bates* issue as raised in Coburn's motion for protective order. See *State v. Peagler* (1996), 76 Ohio St.3d 496, 501, 668 N.E.2d 489 ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue"). Coburn's ninth assignment of error is sustained to the limited extent indicated.

## VII. First Assignment of Error—Prohibition against Further Filings

{¶ 49} Coburn's first assignment of error contends that the trial court erred in prohibiting the parties from filing any new motions with the clerk of courts, as set forth in its journal entry dated August 25, 2009. The journal entry memorialized a status conference of July 21, 2009, at which the trial court expressed concern with the number of pending motions and the breakdown in communication between counsel. The trial court ordered that rather than file motions, the parties were to bring to the court's attention any issues they could not resolve. In so ordering, the entry also noted that because plaintiff's July 23, 2009 filing captioned "Reply to Defendants' Memorandum Contra Motion to Compel Discovery" was in "disregard of the Court's July 21 order," the court would not consider it.

{¶ 50} Coburn filed a reply, not a motion, and thus did not violate the trial court's order prohibiting further motions. More significantly, however, Coburn contends that the trial court's order prohibiting the parties from filing any new motions deprived him of his right to due process of law and equal access to the courts. Coburn contends that the order deprived him of his right to be heard, to make a record, and to present motions in writing. See Civ.R. 7(B). Kleinhenz responds that a trial court not only can use reasonable restrictions on time, place, and manner regarding access to the courts but also can initiate rules regarding the administration of justice, such as a case-scheduling order. Kleinhenz thus asserts that the trial court's order was a reasonable use of the court's administrative powers.

{¶ 51} Section 16, Article I of the Ohio Constitution states: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." The Fourteenth Amendment to the United States Constitution similarly provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." These provisions

guarantee due process of law. "The fundamental requirement of due process is the opportunity to be heard." *United Tel. Credit Union, Inc. v. Roberts*, 115 Ohio St.3d 464, 2007-Ohio-5247, 875 N.E.2d 927, ¶ 13. The provisions also guarantee that the courts "shall be open to every person with a right to a remedy for injury to his person, property or reputation, with the opportunity for such remedy being granted at a meaningful time and in a meaningful manner." *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938.

 {¶ 52} Although a trial court may set reasonable time, place, and manner restrictions on access to the courts and initiate rules regarding the administration of justice, a trial court should refrain from placing limitations on the party's right to be heard. In this case, Coburn filed motions to compel, apparently because the parties could not cooperate in discovery and communication among them degenerated. To prohibit all motions when the trial court acknowledged the parties could not cooperate invites, at the least, discovery abuses. Here, because we determined that the trial court incorrectly granted summary judgment to Kleinhenz, discovery issues again will be prominent on remand. The trial court on remand will need to assess the discovery issues and provide a mechanism for those issues to come before the court for resolution. Because the parties will want to make a record for any further appellate review, the court will need to permit the parties ultimately to file motions, even if the court first requires counsel to follow the court's prefiling plan for addressing the issues. Coburn's first assignment of error is sustained to the limited extent indicated.

## VIII. Sixth, Seventh, and Eighth Assignments of Error—Motions to Compel Discovery

{¶ 53} Coburn's sixth, seventh, and eighth assignments of error contend that the trial court erred in denying as moot his motions to compel discovery filed April 9, 2009, June 17, 2009, and July 10, 2009. The April 9, 2009 motion sought an order compelling Auto–Owners to provide the medical-payments insurance adjuster for deposition. The June 17, 2009 motion requested an order to compel Kleinhenz to supplement discovery responses as they relate to the identity and relevant information regarding their experts. Coburn's July 17, 2009 motion asked for an order to compel Kleinhenz or Nationwide to produce the claims file in this matter. The motions were rendered moot by the trial court's summary-judgment rulings. Based upon our rulings in the second and fourth assignments of error, the motions no longer are moot. The trial court will need to address the motions on remand. Coburn's sixth, seventh, and eighth assignments of error are sustained to the limited extent indicated.

## IX. Miscellaneous Motions

{¶ 54} On appeal, Coburn filed a motion to strike the supplemental authority that Kleinhenz had filed and for costs, damages, and delay pursuant to App.R. 23. Even if Kleinhenz's supplemental authority does not comport with the applicable rules, App.R. 23 applies to frivolous appeals, not frivolous filings. Coburn's motion is denied.

{¶ 55} Domine filed a motion, pursuant to R.C. 2323.51 and App.R. 23, for the imposition of $1,000 in sanctions against Coburn as reasonable attorney fees and expenses incurred in defending against the appeal, contending that the appeal against her was meritless and frivolous. Frivolous conduct is defined in R.C. 2323.51(A)(2)(a)(ii) as conduct that "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." A frivolous appeal under App.R. 23, " 'is essentially one which presents no reasonable question for review.' " *Stuller v. Price*, 10th Dist. No. 03AP–30, 2003-Ohio-6826, 2003 WL 22966820, ¶ 28, quoting *Frowine v. Hubbard* (Feb. 15, 2000), 10th Dist. No. 99AP–496, 2000 WL 284040.

{¶ 56} The purpose of sanctions is to compensate the nonappealing party for the expense of having to defend against a frivolous appeal and to help preserve the appellate calendar for cases that are worthy of consideration. Id. Upon a finding that an appeal is frivolous, the court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in the appeal to any party whom the frivolous conduct adversely affected. Thus, upon finding that the appeal is frivolous, the court may require the appellant to pay reasonable expenses of the appellee, including attorney fees and costs. App.R. 23.

{¶ 57} Here, we determined that the trial court did not err in granting Domine's motion for summary judgment, but that conclusion does not necessarily mean that Coburn's appeal was frivolous. Coburn's appeal from the trial court's decision granting Domine's summary-judgment motion raised a valid point for review; his appeal was not frivolous. Domine's motion for sanctions is denied.

{¶ 58} For the above reasons, Coburn's second assignment of error is sustained, his third, fourth, and fifth assignments of error are overruled, and his first, sixth, seventh, eighth, ninth, tenth, and eleventh assignments of error are sustained to the limited extent indicated. Coburn's motions to strike Kleinhenz's supplemental authority and for costs, damages, and delay pursuant to App.R. 23 are denied. Domine's motion for sanctions is denied. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part,

and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.

> Motions denied;
> judgment affirmed in part
> and reversed in part,
> and cause remanded.

KLATT and CONNOR, JJ., concur.