OPINION
{¶ 1} Appellant, Helen H. Stamm, appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, overruling her objections to and adopting the Magistrate's Report and Decision to compel the enforcement of a settlement agreement. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Myron F. Stamm, of Cortland, Ohio, died testate on November 21, 2003. Myron was survived by his wife, Helen, and by his two children from a previous marriage, Lanny and Gary Stamm, appellees herein. On January 21, 2004, an Application to Probate Will was filed and Gary and Lanny were appointed co-executors of the Estate of Myron F. Stamm.
 {¶ 3} The total value of Myron's assets was approximately 1.4 million dollars. After Myron's death, these assets existed either as part of Myron's estate, as annuities, or as part of The Myron F. Stamm and Helen H. Stamm Family Trust U/A. Gary and Lanny Stamm retained Attorney Robert M. Platt, Jr. to appraise the assets of Myron's estate and act as representative for the estate. In the course of administering the estate, disputes arose between the parties regarding the interpretation and application of the provisions in Myron's will as well as the agreement establishing the Stamm Family Trust.
 {¶ 4} In order to avoid prolonged litigation in the settling of Myron's estate, the parties entered into settlement negotiations. On February 15, 2005, the parties entered into a binding Settlement Agreement. This agreement set forth the inventory of Myron's estate, the annuity assets, and the assets to be divided under the Stamm Family Trust. Included among trust assets were accounts with Sky Bank: an investment checking account worth $17,882.24, a savings account worth $15,667.16, and a certificate of deposit worth $32,628.54. Attorney Platt concluded that these accounts belonged to the trust based on an October 2003 bank statement from Sky Bank. The statement provided account summaries for these three accounts and was addressed to: "Myron F and Helen H Stamm Fam[ily] R[e]v[ocable] Liv[ing] T[ru]s[t]/Myron F Stamm and/Helen H. Stamm Trustees."
 {¶ 5} The original certificate of deposit was located in a safety deposit box at the former First Western Bank in Sharon, Pennsylvania. The original certificate indicated that the account was a joint and survivorship account. Platt testified that he discovered the original certificate when he first inventoried the safe deposit box and that "these documents were provided to opposing counsel months before the settlement was reached."
 {¶ 6} The Settlement Agreement provided for the distribution of estate and trust assets between Lanny, Gary, and Helen. The agreement provided that Lanny and Gary were to receive the certificate of deposit at Sky Bank, a trust account at Cortland Savings and Banking Company worth $4,300, and a trust account at First Place Bank worth $5,000.
 {¶ 7} Other relevant portions of the agreement provided that Lanny and Gary "shall pay all debts, estate taxes, estate income taxes and costs of administration, including attorney fees for the estate"; that Helen shall receive, in addition to the assets set forth in the agreement, "[a]ll other funds that are not listed as assets of the Estate or Trust described in this agreement"; that the "parties * * * acknowledge that they have had the opportunity to review this agreement in advance with counsel and that each person voluntarily executes this agreement as his/her free will and deed."
 {¶ 8} On the same day the parties entered into the Settlement Agreement, the probate court ordered the distribution of estate assets.
 {¶ 9} Except for $636.42 from the Cortland Savings account, Helen never tendered Lanny and Gary the money as provided for in the agreement.
 {¶ 10} On April 11, 2005, Lanny and Gary filed a Motion to Enforce Settlement Agreement and to Show Cause seeking an order from the court to compel Helen to deliver, among other assets, the remaining $4,300 from the Cortland Savings account, the money in the First Place account, and the Sky Bank certificate of deposit.
 {¶ 11} A hearing was held on Lanny and Gary's motion on May 24, 2005. At this hearing, Helen testified that Lanny already had the money from the Cortland Savings account and that she would "give what I have to give" when it was explained to her where the $636 amount came from. In regard to the First Place account, Helen testified that she did not intend to deliver the money to Lanny and Gary because her social security payments had been going into that account. Finally, Helen testified that she did not intend to deliver the Sky Bank certificate of deposit because "it was not in the trust."
 {¶ 12} The magistrate decided that the settlement agreement should be enforced and ordered Helen to tender all monies owed to Lanny and Gary from the Cortland Savings, First Place, and Sky Bank accounts. The magistrate explained: "The Settlement Agreement clearly provided that the three accounts were to be paid to Lanny and Gary Stamm. In exchange, Lanny and Gary Stamm would pay all debts, estate taxes, estate income taxes and costs of administration. The terms of the Settlement Agreement were clear and the three accounts were material to the agreement. However, since this was a global settlement, the allocation of `trust assets' vs. `estate assets' was not material. Throughout the negotiations, allegations regarding `missing money' flew back and forth. The Settlement Agreement was reached with the specific intention that the estate would receive certain funds and that Helen Stamm could keep any other previously undisclosed assets."
 {¶ 13} Helen filed objections to the magistrate's decision only in regard to the Sky Bank certificate of deposit. Helen argued that, as a survivorship asset, the certificate of deposit vested in her upon Myron's death and was not properly an asset of the estate or the trust. The inclusion of the certificate in the Settlement Agreement was due to a misrepresentation by Attorney Platt, the estate representative. Since the Settlement Agreement was based upon a mistake, it should not be binding as to this asset.
 {¶ 14} On July 27, 2005, the probate court overruled Helen's objections and adopted the magistrate's decision. This appeal timely follows.
 {¶ 15} On appeal, Helen raises the following assignments of error.
 {¶ 16} "[1.] The fiduciary of an estate has a duty and obligation to present to the probate court factual [sic] correct information which the fiduciary knows the parties to the action will place reliance upon in the settlement of claims, and failure to do so is cause for an [sic] reformation of the settlement based upon factually incorrect representations made to the court.
 {¶ 17} "[2.] A joint and survivorship account vests in the surviving joint tenant at death, and a fiduciary of an estate or inter vivos trust may not claim it as an asset of the estate or trust, subject to a settlement of estate assets or assets of an inter vivos trust.
 {¶ 18} "[3.] The trial court erred in interjecting itself into the negotiations of a claim.
 {¶ 19} "[4.] In a settlement agreement arising under the circumstances of failure to disclose the true nature of assets, failure to make a complete inventory and/or mistake, which was incorporated into a journal entry, the standard of review by the appellate court and [sic] is analogous to a Civil Rule 60(B) standard to overturn the journal entry, as an abuse of discretion or against the manifest weight of the evidence."
 {¶ 20} "When parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract." Perko v. Perko, 11th Dist. Nos. 2001-G-2403, 2002-G-2435, and 2002-G-2436, 2003-Ohio-1877, at ¶ 27, citingWalther v. Walther (1995), 102 Ohio App.3d 378, 383. In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the decision whether to enforce the terms of a settlement agreement is within the court's discretion. Girard v.Leatherworks Partnership, 11th Dist. No. 2004-T-0010,2005-Ohio-4779, at ¶ 28, citing Walther,102 Ohio App.3d at 383. "Neither a change of heart nor poor legal advice is a reason to set aside a settlement agreement." Perko, 2003-Ohio-1877, at ¶ 27 (citation omitted).
 {¶ 21} Under the first assignment of error, Helen argues that Attorney Platt breached his fiduciary duty as representative of the estate by representing the Sky Bank certificate of deposit as a trust asset and that Helen was justified in relying upon this representation. We disagree.
 {¶ 22} Unless Platt's misrepresentation as to the certificate of deposit rose to the level of fraud, it is not grounds for repudiating the Settlement Agreement. Here, there is no evidence that Platt intentionally misrepresented the nature of the certificate of deposit. Rather, the evidence shows that Platt relied upon a bank statement indicating the certificate was trust property while inadvertently overlooking the original certificate indicating a joint and survivorship account. Significantly, Platt testified that he turned over the documents relating to the certificate of deposit to Helen "months before" the Settlement Agreement was reached.
 {¶ 23} Helen was not entitled to blindly rely upon Platt's characterization of this asset. Although retained to represent the estate, Platt was retained by Lanny and Gary, with whom Helen's dealings were adversarial in nature. As the magistrate observed, there was much contention regarding the existence and nature of Myron's assets. Helen had retained her own counsel and had a duty to read and consider the agreement she was entering into. The Settlement Agreement is not an estate inventory, schedule of assets, or some other document Platt was required to file with the court. It is a voluntary agreement created and entered into by the parties themselves. One of the purposes of the Settlement Agreement was to avoid litigating issues regarding which assets belonged to the estate. Accordingly, the agreement provides that the parties "have had the opportunity to review this agreement in advance with counsel and that each person voluntarily executes this agreement as his/her free will and deed."
 {¶ 24} Helen relies on the case of In re Ewing, 3rd Dist. No. 5-03-03, 2003-Ohio-4734, where a court of appeals overturned the probate court's approval of an inaccurate estate inventory. Id. at ¶ 15. Ewing is distinguishable for the reasons cited above. In Ewing, a formal inventory was submitted and approved over appellant's objection. Moreover, in contrast to the present case, "there was no written agreement among the beneficiaries * * * to distribute the estate in the manner in which they did." Id. at ¶ 13.
 {¶ 25} Alternatively, Helen asserts that she is entitled to rescission of the agreement under the doctrine of mutual mistake. A contract may be rescinded under the doctrine of mutual mistake when the agreement is based upon a material mistake of fact or law. Irvin v. Wilson (1887), 45 Ohio St. 426, 437. "A mistake is material to a contract when it is `a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances." Reilleyv. Richards, 69 Ohio St.3d 352, 353, 1994-Ohio-528 (citation omitted). In other words, "the intention of the parties must have been frustrated by the mutual mistake." Id.
 {¶ 26} The intention of the parties in the present case, as stated in the Settlement Agreement, was "to settle and to compromise their respective rights under the Will and Trust Agreement and in and to certain assets owned by the Decedent." The magistrate properly described the agreement as a "global settlement" to avoid a will construction action and further court involvement. The mistaken inclusion of the certificate of deposit as a trust asset does not frustrate this purpose. Cf. McCarthyv. Patridge (March 31, 1995), 10th Dist. No. 94APF06-889, 1995 Ohio App. LEXIS 1314, at *9-*10, concerning an agreement to settle a decedent's estate that included property jointly held by the decedent and the surviving spouse: "Appellees assert on appeal that the settlement was a final resolution of all issues between the parties, and that it was their intention * * * to enter into such a final and all-inclusive agreement. Under such conditions, any mistake as to the intended scope of the agreement would be purely unilateral on the part of the appellant, and the doctrine of mutual mistake is therefore inapplicable."
 {¶ 27} The probate court's enforcement of the Settlement Agreement does not constitute an abuse of discretion. The first assignment of error is without merit.
 {¶ 28} Under the second assignment of error, Helen asserts that a "beneficiary's interest in a joint and survivorship type of account vests upon the death of the owner." As a proposition of law, Helen is correct. Wright v. Bloom, 69 Ohio St.3d 596,1994-Ohio-153, at paragraph two of the syllabus ("The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death.").
 {¶ 29} As an assignment of error, however, Helen's assertion does not present grounds for overturning the judgment. Regardless of whether the Sky Bank certificate of deposit became Helen's property upon Myron's death, Helen entered into a binding agreement to deliver those funds to Lanny and Gary.
 {¶ 30} The second assignment of error is without merit.
 {¶ 31} Under the third assignment of error, Helen argued the magistrate erred by signing the Settlement Agreement as a witness. Helen cites no authority for this proposition. In light of the fact that a court may adopt as its judgment oral agreements entered into by the parties in its presence, Booth v.Booth, 11th Dist. No. 2002-P-0099, 2004-Ohio-524, at ¶ 6 (citation omitted), we see no harm in the magistrate witnessing their written agreement signed in the court's presence.
 {¶ 32} The third assignment of error is without merit.
 {¶ 33} Under the fourth and final assignment of error, Helen argues that she is entitled to relief from judgment under the standard set forth in Civ.R. 60(B). As Helen has not filed a motion for relief from judgment, or any written motion to set aside the Settlement Agreement, we decline to apply that standard in the present case.
 {¶ 34} The fourth assignment of error is without merit.
 {¶ 35} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Probate Division, compelling the enforcement of the Settlement Agreement between the parties is affirmed.
Cynthia Westcott Rice, J., concurs,
Colleen Mary O'Toole, J., dissents.