[Cite as *Quesinberry v. Quesinberry*, 2022-Ohio-635.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

ANNA CAROL QUESINBERRY          :
                                :
    First Petitioner/Appellant   :    Appellate Case No. 29192
                                :
v.                              :    Trial Court Case No. 2018-DM-175
                                :
NATHAN QUESINBERRY              :    (Domestic Relations Appeal)
                                :
    Second Petitioner/Appellee   :
                                :

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of March, 2022.

. . . . . . . . . . .

ROBERT M. HARRELSON, Atty. Reg. No. 0003302 and WILLIAM H. HARRELSON, II, Atty. Reg. No. 0087957, 9 West Water Street, Troy, Ohio 45373
    Attorneys for First Petitioner/Appellant, Anna Carol Quesinberry

THOMAS G. EAGLE, Atty. Reg. No. 0034492, 3400 North State Route 741, Lebanon, Ohio 45036
    Attorney for Second Petitioner/Appellee, Nathan Quesinberry

MICHELLE M. MACIOROWSKI, Atty. Reg. No. 0067692, 7333 Paragon Road, Suite 170, Centerville, Ohio 45459
    Attorney for Appellee, Ariel Quesinberry

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Anna Carol Quesinberry appeals from the trial court's judgment sustaining appellee Nathan Quesinberry's objections to a magistrate's decision and overruling her Civ.R. 60(B) motion to vacate a dissolution decree containing a separation agreement.

{¶ 2} Anna contends the trial court had subject-matter jurisdiction to vacate the dissolution decree in its entirety.[1] She also asserts that the trial court abused its discretion in denying relief based on material misrepresentations made by Nathan while negotiating the separation agreement.

{¶ 3} We conclude that the trial court possessed subject-matter jurisdiction to vacate the entire dissolution decree under Civ.R. 60(B). We also agree with Anna that the trial court abused its discretion in failing to grant her relief under Civ.R. 60(B) based on at least one material misstatement made by Nathan during negotiation of the parties' separation agreement. As a result of this misstatement, the separation agreement was the product of a mutual mistake regarding Anna's entitlement to receive both child support and spousal support. Because there was no valid agreement upon which to base the dissolution decree, the trial court's judgment will be reversed, and the case will be remanded for further proceedings.

## I. Factual and Procedural Background

{¶ 4} Anna and Nathan married in 2001 and had four children together. In April 2018, they petitioned the trial court for dissolution of their marriage. Along with the petition,

---

[1] For purposes of clarity, we will refer to the parties by their first names. We note that Nathan's new wife, Ariel Quesinberry, also is a party to case as an appellee. For purposes of our analysis herein, however, we will refer primarily to Anna and Nathan, who are the parties to the dissolution decree at issue.

they submitted financial-disclosure affidavits and other documents. Nathan reported income of $149,000, and Anna reported no income. Following a hearing, the trial court granted the petition and filed a dissolution decree on May 23, 2018. The decree incorporated a separation agreement that the parties had submitted.

{¶ 5} The separation agreement listed and divided various assets and debts. It awarded Nathan the marital residence and obligated him to pay the mortgage. It also required Nathan to pay the parties' other debts, including nearly $60,000 in credit-card debt. Each party retained a vehicle and any corresponding debt on it. The agreement awarded Anna $85,000 from Nathan's retirement account through his employment. It did not provide spousal support for either party, and there was no reservation of jurisdiction. Finally, the agreement provided for 50/50 shared parenting and obligated Nathan to pay total child support of $1,252 per month (with medical insurance) or $1,665 per month (without medical insurance). The agreement recognized that the amount of child support constituted a 50-percent downward deviation from the "worksheet" figure. The parties agreed that the worksheet amount would be "unjust or inappropriate" in light of their 50/50 shared parenting. The agreement also stated that the agreed child-support amount would allow both parties to maintain the children's standard of living, which the parties believed was in the children's best interest.

{¶ 6} On May 22, 2019, Anna filed a Civ.R. 60(B) motion seeking to vacate the dissolution decree. She argued that Nathan had failed to disclose the existence and value of certain assets and debts. She further argued that he had made misrepresentations that had deprived her of any spousal support and one-half of the child support to which she otherwise would have been entitled. Based on these alleged omissions and

misrepresentations, Anna asserted that no true "meeting of the minds" existed with regard to the terms of the separation agreement. She sought relief under Civ.R. 60(B)(3) based on fraud, duress, and undue influence, and under Civ.R. 60(B)(5) based on the separation agreement's violating public policy and being unreasonable and unconscionable insofar as it provided her with no spousal support despite a 17-year marriage, Nathan's annual income of $149,000, and her lack of any meaningful income.

{¶ 7} A magistrate held a two-day hearing on Anna's motion in November 2020. The only witnesses at the hearing were Anna and Nathan. Based on the evidence presented, the magistrate found the existence of mutual mistakes insofar as the separation agreement (1) failed to note the parties' sale of their respective vehicles prior to entry of the dissolution decree and (2) omitted the existence of savings bonds and college-savings accounts. The magistrate also found that Nathan had made material misrepresentations to Anna concerning (1) her not being entitled to both child support and spousal support and (2) the need for a 50-percent downward deviation on child support to account for the 50/50 shared parenting. The magistrate further noted that Anna received none of the home equity, which the magistrate found was about $100,000. The magistrate also found that Anna's share of all of Nathan's various retirement accounts should have been $95,989.24 whereas she only received $85,000 from one account. Finally, the magistrate found that Anna would have been entitled to one-half of two bank accounts with a combined value in excess of $7,000. The magistrate then reasoned:

> Anna ended up with no home, no vehicle, no spousal support, no health care, and half the amount of child support with an obligation to pay one-half of uninsured medical after the first $100.00. She drives borrowed

cars. She lived in a camper outside her parents' home for three months until they purchased a home for her to rent from them. She is cleaning houses, living paycheck to paycheck.

There is no question that Anna did not take steps to protect her interest during the dissolution. She signed the documents without understanding them. She stood in front of Magistrate Turrell and under oath confirmed that she read and understood the documents, and that she was satisfied with the terms of their agreement [Exhibit PP]. This was based on what she understood she was entitled to receive as misrepresented to her by Nathan. Nathan took on a lot of debt, but kept most of the assets. Nathan's misrepresentations to Anna, and other misconduct as outlined above, resulted in an outcome that was very favorable to Nathan.

(December 29, 2020 Magistrate's Decision at 12.)

{¶ 8} For the foregoing reasons, the magistrate found Anna entitled to relief from judgment under Civ.R. 60(B)(1) and (3). (*Id.* at 9, 12.)[2] The magistrate ordered the

---

[2] Although Anna's motion did not reference "mistake" under Civ.R. 60(B)(1), it formed part of her argument. She asserted that Nathan had made fraudulent and knowing misrepresentations. In order to prevail on this claim, Anna needed to show that Nathan (1) made false statements and (2) made them with ill intent. As explained more fully below, Anna could demonstrate mutual mistake by establishing just the first part of her argument, namely that Nathan made false representations on which she relied. Even if he did not make the false statements knowingly or act with ill will, his misrepresentations could result in a mutual mistake, providing grounds for relief under Civ.R. 60(B)(1). We note too that both parties have briefed the mutual-mistake issue on appeal. Therefore, the issue of Anna's entitlement to relief under Civ.R. 60(B)(1) properly is before us. *See Carnes v. Carnes*, 2015-Ohio-2925, 38 N.E.3d 1214, ¶ 22 (1st Dist.) ("While Molly did not refer to Civ.R. 60(B)(1) or use the term 'mistake' when presenting this issue in the trial court proceedings and in her argument on appeal, this issue was necessarily a subpart of her motion to vacate based on her recent discovery of the bigamy. Thus, the evidentiary basis for this issue was adduced before the trial court, Frank had the opportunity to

dissolution decree vacated in its entirety. Nathan responded with 34 pages of objections and 64 pages of supplemental objections.

{¶ 9} In a June 14, 2021 decision and judgment entry, the trial court found Nathan's objections well taken in part and overruled Anna's motion for Civ.R. 60(B) relief. The trial court began by noting that the terms of the separation agreement precluded it from being modified except through a signed agreement by the parties. The trial court also observed that R.C. 3105.65 and R.C. 3105.18 preclude modifying the amount or terms of a spousal-support order absent a reservation of jurisdiction in a separation agreement. The trial court noted too that R.C. 3105.65 precludes modifying a property division in a separation agreement absent the written consent of both parties. Finally, the trial court cited *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, and *Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460, finding that absent a reservation of jurisdiction it could not modify or vacate a spousal-support award or a property division in a separation agreement. The trial court reasoned that to vacate the parties' agreement of no spousal support "and re-consider an award of spousal support for Anna would be an unauthorized modification of the parties' Separation Agreement." (June 14, 2021 Decision and Judgment Entry at 9.)

{¶ 10} The trial court next considered the possibility of vacating the entire dissolution decree (as Anna's Civ.R. 60(B) motion had requested) rather than vacating or modifying portions of the separation agreement, such as the provision denying either party spousal support. The trial court recognized that a separation agreement is a binding

---

challenge it, and this court may address it, even if Molly did not articulate it as such, unless we put form over substance, in contradiction to the remedial purpose of Civ.R. 60(B).").

contract incorporated into a dissolution decree. The trial court also cited case law recognizing that if mutuality is absent when parties enter into a separation agreement due to fraud, mutual mistake, or material misrepresentation, then there is no valid "agreement" on which to base a dissolution decree. The trial court acknowledged that the lack of a valid separation agreement may constitute grounds to set aside a dissolution decree under Civ.R. 60(B).

{¶ 11} The trial court concluded, however, that various omissions in the parties' separation agreement were relatively minor and did not warrant vacating the dissolution decree in its entirety. The trial court also found that both parties had acknowledged and agreed to the terms of the separation agreement, despite the fact that it contained some omissions, that Nathan did not knowingly conceal information from Anna regarding their assets and liabilities, and that Anna willingly and voluntarily signed the agreement. Therefore, the trial court found no fraud or knowing misrepresentation by Nathan regarding the terms of the separation agreement.

{¶ 12} The trial court did find, however, that Anna had relied to her detriment on Nathan's statement to her about being allowed to receive child support or spousal support, but not both. Based on Anna's testimony, the trial court found it reasonable to infer that Nathan may "have meant that he couldn't afford both child and spousal support, not that he intentionally misrepresented the law to Anna." (June 14, 2021 Decision and Judgment Entry at 14.) The trial court also noted that Anna could have investigated the truth of what Nathan told her. For these reasons, the trial court found no proof that Nathan knowingly misrepresented the law and no reasonable reliance by Anna on what he told her regarding spousal support.

{¶ 13} In conclusion, the trial court found it inequitable to vacate the dissolution decree based on Anna's challenge to the separation agreement. In reaching its conclusion, the trial court found it relevant that Nathan had remarried. The trial court also pointed to Anna's acknowledgement at the dissolution hearing that she had read the agreement, that she understood it, and that she was satisfied with its terms. The trial court found that Anna made these representations voluntarily and not out of duress. Under the circumstances, the trial court found the need for "finality of judgments" paramount, reasoning:

> The court has struggled with this decision which demanded the weighing of fairness, accuracy, and equity with the need for finality of the court's judgment and the law regarding the use of a 60(B) motion in a dissolution. As the magistrate stated, "there is no question that Anna did not take steps to protect her interest during the dissolution." However, she went further than that. She represented to the court that she understood and was satisfied with the terms of the Separation Agreement, the Judgment Entry, and the Shared Parenting Plan submitted to the court. That she sought counsel and advice a year after her request to the court to accept the documents as ratified by her, is, in this court's view, insufficient to entirely vacate the dissolution for purposes of inequity in hindsight.

(*Id*. at 17.)

## II. Analysis

{¶ 14} Anna advances the following four assignments of error:

> I. The Trial Court committed reversible error in determining that it did

not have subject matter jurisdiction to grant Appellant Anna Quesinberry's Civ.R. 60(B) motion in holding that a vacation of the separation agreement would be a prohibited modification of the award of spousal support and property division.

II. The Trial Court abused its discretion in denying Appellant's Civ.R. 60(B) motion to vacate the dissolution merely because she had appeared at the final hearing and verbalized her assent to the Separation Agreement at the time of the dissolution.

III. The Trial Court abused its discretion in denying Appellant's Civ.R. 60(B) motion where, despite finding Anna's testimony credible that Nathan made misrepresentations to Anna and engaging in speculation as to the meaning of his testimony, it held both that Nathan did not "knowingly" make those misrepresentations and that Anna did not demonstrate justifiable reliance.

IV. The Trial Court abused its discretion in denying Appellant's Civ.R. 60(B) motion where it held that the evidence did not support a lack of mutuality or, if any question of mutuality existed, it was an insufficient basis to vacate the dissolution.

{¶ 15} Under Civ.R. 60(B), a trial court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1)-(5).

{¶ 16} To prevail on a Civ.R. 60(B) motion, a party must establish: (1) a meritorious claim or defense to present if the court grants relief; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion was filed within a reasonable time and, when relying on Civ.R. 60(B)(1), (2), or (3), it was filed not more than one year after the judgment was entered. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. If a moving party fails to establish any of these requirements, a trial court must overrule the motion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). Because a trial court exercises discretion when ruling on a Civ.R. 60(B) motion, we will not disturb its ruling absent an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). The phrase "abuse of discretion" connotes an attitude that is arbitrary, unconscionable, or unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 17} Here the trial court correctly recognized that Civ.R. 60(B) could not be used to alter the terms of the parties' separation agreement as it pertained to spousal support

or their property division. A trial court "has no unilateral authority to modify any provision of [a] separation agreement." *Morris,* 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, at ¶ 18. Once approved by a trial court and incorporated into a dissolution decree, the parties' agreement becomes a legally binding contract. *Id.* A trial court may alter the terms of a separation agreement only when the parties have incorporated into it a clause permitting spousal support or a property division to be changed. *Id.* at ¶ 33-47. In such case, Civ.R. 60(B)(1), (2), or (3) is a proper vehicle for obtaining relief. *Id.* at ¶ 46.

{¶ 18} We need not dwell on the foregoing issue, however, because Anna does not claim the trial court should have *altered* the terms of the separation agreement. Her Civ.R. 60(B) motion sought *vacation* of the dissolution decree in its entirety, not alteration of the separation agreement while leaving the decree intact. Likewise, Anna argues on appeal that the trial court had authority to vacate the entire decree while conceding that it could not vacate or modify portions of the separation agreement. (Appellant's Brief at 10-11.)

{¶ 19} For his part, Nathan accuses Anna of engaging in semantics by drawing a distinction between "modifying" and "vacating." He reasons that vacating the entire dissolution decree *is* modifying the parties' agreement regarding spousal support and the division of property. (Appellee's Brief at 5-6.) Nathan argues that Anna had "X" (no spousal support) and now wants "Y" (spousal support). He contends what Anna seeks is a change (or modification) to the parties' separation agreement, which she cannot obtain absent the consent of both parties. Nathan insists that "changing it is changing it, whether you call it vacating it or something else." (Appellee's Brief at 6.) In support, he relies largely on *Walsh v. Walsh*, 157 Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460. In

*Walsh*, the trial court modified a provision in a divorce decree specifying the duration of the marriage for purposes of dividing a pension. The Ohio Supreme Court held that this modification to the decree could not be made under Civ.R. 60(B) without the consent of both parties. *Walsh* did not involve an attempt to use Civ.R. 60(B) to vacate an entire divorce or dissolution decree.

{¶ 20} Contrary to Nathan's assertion, we are unpersuaded that vacating an entire dissolution decree is the same as modifying the terms of a separation agreement contained within a decree. Anna is not seeking to change the terms of the separation agreement. Her argument is broader and more fundamental. In essence, she claims no valid separation agreement exists. Therefore, the dissolution decree is subject to being vacated under Civ.R. 60(B). This argument does not depend on any reservation of jurisdiction or agreement between the parties to modify the agreement. According to Anna, there *is no* enforceable agreement. In our view, this raises a different issue than whether Civ.R. 60(B) may be used to modify the terms of a valid separation agreement.[3]

{¶ 21} We recently recognized that fraud or material mistake can invalidate a separation agreement and entitle a party to relief from a dissolution decree under Civ.R. 60(B). We explained:

---

[3] We recognize that permitting a party to obtain the vacation of a dissolution decree could be perceived as an end run around the rule that a separation agreement cannot be modified without the parties' agreement. In response to such an argument, we note, again, that the issue is different when a party seeks to have an entire dissolution decree set aside. In such a case, the question is whether a valid separation agreement exists at all. As will be discussed more fully herein, resolution of this issue depends on the magnitude of the claimed error or defect and whether it is sufficient to find no enforceable agreement upon which a dissolution could have been based. Not every error or defect that might warrant modifying the terms of a separation agreement with the consent of the parties will justify vacating a dissolution decree against one party's wishes.

A decree of dissolution is founded on an agreement of the parties. As the Ohio Supreme Court has stated, "mutual consent is the cornerstone of our dissolution law." *Knapp v. Knapp*, 24 Ohio St.3d 141, 144, 493 N.E.2d 1353 (1986). "[I]f consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or material mistake or misrepresentation, then there was no agreement upon which the dissolution decree could have been based. This lack of mutuality undermines the integrity of the dissolution proceeding and may constitute sufficient grounds to set aside the decree under Civ.R. 60(B)." *In re Whitman*, 81 Ohio St.3d 239, 241, 690 N.E.2d 535 (1998). * * *

*Molnar-Satterfield v. Molnar*, 2d Dist. Greene No. 2020-CA-52, 2021-Ohio-2698, ¶ 14.

{¶ 22} This court recognized the issue again in *Wuebben v. Wuebben*, 2d Dist. Greene No. 2017-CA-62, 2018-Ohio-4768, observing:

"Dissolution is a creature of statute that is based upon the parties' mutual consent." *In re Whitman*, 81 Ohio St.3d 239, 241, 690 N.E.2d 535 (1989). An integral part of the dissolution proceeding is the separation agreement agreed to by both spouses. *Id.*, citing R.C. 3105.63(A)(1). The separation agreement, a binding contract between the parties, must provide for a division of all property. *Id.* at 241. Thus, Ohio courts have held that "if consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or mutual mistake or misrepresentation, then there was no agreement upon which the decree of dissolution could have been based. This lack of mutuality undermines the

integrity of the dissolution proceeding and may constitute grounds to set
aside the decree under Civ.R. 60(B)." *Id.* at 241 * * *.

*Id.* at ¶ 19.

{¶ 23} In *Nardecchia v. Nardecchia*, 155 Ohio App.3d 40, 2003-Ohio-5410, 798 N.E.2d 1198 (2d Dist.), this court found a party entitled to Civ.R. 60(B) relief vacating a dissolution decree based on a mistake regarding the value of the husband's retirement account. In reaching its conclusion, this court recognized that "[a] decree of dissolution is founded on an agreement of the parties." *Id.* at ¶ 13. Where a material mistake vitiates the existence of consent or mutuality, then no true agreement exists on which to base a dissolution decree. *Id.*

{¶ 24} Finally, in *Ouellette v. Ouellette*, 2020-Ohio-705, 152 N.E.3d 528 (6th Dist.), the parties were granted a divorce pursuant to a consent decree. The property-division portion of the parties' agreement awarded the wife a lump-sum payment from her husband's pension. Following the divorce, the parties discovered that a lump-sum payment was not possible. The wife then sought relief under Civ.R. 60(B)(1) on the basis of mutual mistake. She requested either a modification of the property settlement to grant her the lump-sum from another account or vacation of the entire property settlement so that it could be renegotiated. The trial court granted relief on the basis of mutual mistake. It vacated the portion of the property award requiring payment of a lump-sum from the pension and ordered husband to pay the money within six months without specifying a source of funds. On review, the Sixth District held that the trial court could not use Civ.R. 60(B) to modify the terms of the property division in the parties' consent decree without their approval. *Id.* at ¶ 22. The Sixth District saw no reason, however, why the trial court

could not vacate the entire property division or the divorce decree itself based on mutual mistake. The Sixth District reasoned:

> * * * In other words, appellant argues that a trial court will never have authority to set aside—upon a timely motion—an agreed entry that resulted from mutual mistake regarding a material term, unless all parties consent. Where, as in this case, a party demonstrates facts that challenge the very formation of a consent decree, a motion for relief under Civ.R. 60(B)(1) is appropriate. *Whitman*, 81 Ohio St.3d at 241, 690 N.E.2d 535 (without mutuality, "there was no agreement upon which [the decree] could have been based.") We therefore conclude that the trial court did have jurisdiction to consider appellee's Civ.R. 60(B)(1) motion, even if the remedy of modification was improperly ordered.

*Id.* at ¶ 33.

{¶ 25} In the present case, Anna sought vacation of the dissolution decree based on multiple alleged deficiencies in the separation agreement. As set forth above, she claimed the separation agreement failed to account for and divide all of the parties' assets and debts. She also argued that it failed to award her a proper share of the home equity and Nathan's pension. With regard to these issues, we see no abuse of discretion in the trial court's denial of Civ.R. 60(B) relief based on fraud, misrepresentation, or mistake.

{¶ 26} The trial court noted that the parties sold their respective vehicles after submitting their separation agreement and before the trial court issued its dissolution decree. Technically, then, the separation agreement was inaccurate at the time of the dissolution because it listed the two sold vehicles as assets. We see no prejudice to Anna,

however, because the separation agreement gave each party one of the vehicles, along with any corresponding debt, free and clear from any claim of the other party. The fact that the parties both sold their own vehicles before the dissolution was finalized is not a material omission from the decree.

{¶ 27} The trial court also noted that the separation agreement omitted reference to certain savings bonds and college-saving accounts as well as a "GAP" store credit-card debt and a debt owed to Anna's parents. Under the separation agreement, however, Nathan assumed all debt, and the record reflects that he took responsibility for the missing credit-card debt. He also signed an agreement to repay Anna's parents. As for the savings bonds and college-savings accounts, Anna appears to have had knowledge of their existence. In any event, the trial court did not abuse its discretion in finding them relatively de minimus in light of the parties' overall financial situation and insufficient to justify vacating the entire dissolution decree.

{¶ 28} The trial court also found that Anna had knowledge of Nathan's retirement accounts and negotiated with him to receive $85,000 from them. The fact that an equal division of the accounts would have resulted in her receiving roughly $10,000 more does not justify vacating the dissolution and relieving Anna from her voluntary agreement. At a minimum, the trial court did not abuse its discretion in reaching such a conclusion. The trial court likewise did not abuse its discretion in refusing to vacate the dissolution decree based on Nathan's keeping the marital home without compensating Anna for any home equity. Anna voluntarily agreed to forego receiving any payment in exchange for Nathan bearing responsibility for two mortgages and virtually all other marital debt, which was substantial. The trial court found that Anna and Nathan agreed on the home value and

that Anna was or should have been aware of the amount of the mortgages and other debt. Anna also testified that she agreed to forego compensation for home equity because Nathan told her that he would be forced to sell the house if he had to pay her. Anna did not want Nathan to sell the house because she wanted him to have it for their children. Under these circumstances, the trial court did not act unreasonably in failing to vacate the dissolution decree due to Anna's non-receipt of any compensation for home equity.

{¶ 29} In our view, the closer questions are whether Anna is entitled to Civ.R. 60(B) relief based on (1) her receipt of child support in an amount that is 50 percent of the baseline "worksheet" amount or (2) her failure to receive any spousal support. With regard to child support, we see no abuse of discretion in the trial court's ruling. The separation agreement provided for 50/50 shared parenting and obligated Nathan to pay child support in an amount that constituted a 50-percent downward deviation from the "worksheet" figure. During the hearing, Anna recalled Nathan telling her "that since we were parenting 50/50 that the child support would just be split in half." (Hearing Tr. Vol. I at 109.)

{¶ 30} It is unclear whether Nathan was saying the law required a 50-percent adjustment or whether he was making what he believed was an equitable proposal. The terms of the separation agreement suggest, however, that the parties entered into what they believed was a fair agreement, not that the law required the deviation. In the separation agreement, the parties mutually agreed that the worksheet amount would be "unjust or inappropriate" in their case in light of the shared parenting. They also agreed that the 50-percent deviation would allow both parties to maintain the children's standard of living and that doing so was in the children's best interest. This language suggests that Anna voluntarily agreed to a 50-percent reduction for personal reasons, not that Nathan

misled her into believing such a deviation was required by law. We see no abuse of discretion in the trial court's denial of Civ.R. 60(B) relief on the child-support issue. The trial court reasonably could have found no fraud, misrepresentation, or mutual mistake.

{¶ 31} With regard to spousal support, Anna testified: "Nathan told me that I had to choose either child support or alimony, that I wasn't allowed to have both." (Hearing Tr. Vol. I at 95.) According to Anna, he recommended her choosing child support, which would be better for her financially. (*Id.*) Anna also testified that Nathan told her he could not afford a lump-sum payment if she elected to take alimony. (*Id.* at 120.) Finally, she testified that he offered to pay for their children's health care, sports fees, and other necessities if she chose child support and did not demand any compensation for home equity. (*Id.*) For his part, Nathan denied telling Anna anything about having to pick either child support or spousal support.

{¶ 32} As noted above, the magistrate found that Nathan did tell Anna she was not allowed to have child support and spousal support. When reviewing Nathan's objections, the trial court agreed that Nathan had made the statement. The trial court inferred, however, that Nathan may "have meant that he couldn't afford both child and spousal support, not that he intentionally misrepresented the law to Anna." (June 14, 2021 Decision and Judgment Entry at 14.) The trial court also reasoned that Anna could have investigated the issue herself. Therefore, the trial court found that Anna had not proven a knowing misrepresentation by Nathan or justifiable reliance on what he told her.

{¶ 33} Upon review, we believe the trial court's inference about the meaning of Nathan's statement was unreasonable. Anna testified that Nathan said she "*wasn't allowed to have*" both child support and spousal support and that she "had to" choose

one or the other. (Emphasis added.) This testimony does not support a reasonable inference that Nathan meant he *could not afford* to pay both.

{¶ 34} If Nathan truly believed that Anna was not allowed to receive child support and spousal support, then his statement to her would not constitute fraud or a knowing misrepresentation. But the magistrate and the trial court both found that Nathan made the statement,[4] which undoubtedly was incorrect, as nothing in domestic-relations law precluded Anna from receiving both child support and spousal support. Therefore, the parties' separation agreement was the product of a mutual mistake with regard to spousal support.

{¶ 35} The parties' mistake about spousal support was a material one. The separation agreement awarded Anna a vehicle (which she sold, apparently because she could not afford the debt), $85,000 from Nathan's retirement account, and 50-percent of the "worksheet" child-support amount for four children. In light of the parties' 17-year marriage and the disparity in their incomes, Anna almost certainly would have been entitled to a substantial spousal-support award.

{¶ 36} Once approved and incorporated into the trial court's dissolution decree, the separation agreement became a binding contract. A mutual mistake of fact or law regarding a material term of a contract is grounds for rescission:

"A contract may be rescinded under the doctrine of mutual mistake

---

[4] Nathan claims the trial court did not find that he made the statement about which Anna testified. He suggests the trial court meant that *if* he made the statement it addressed his ability to afford child support and spousal support. (Appellee's Brief at 25.) We disagree. In its ruling, the trial court explicitly found that "[o]ne misdirection upon which Anna relied to her detriment was that Nathan told her she could receive child support or spousal support but not both." (June 14, 2021 Decision and Judgment Entry at 14.)

when the agreement is based upon a material mistake of fact or law." *In re Estate of Stamm*, 11th Dist. No.2005-T-0098, 2006-Ohio-5176, at ¶ 25 (citation omitted). "A mistake is material to a contract when it is 'a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' " *Reilley v. Richards*, 69 Ohio St.3d 352, 353, 632 N.E.2d 507, 1994-Ohio-528 (citation omitted). Regarding settlement agreements, "[i]f each party is mistaken as to a material fact of settlement, then there could be no meeting of the minds, and thus no valid contract for settlement." *Connolly v. Studer*, 7th Dist. No. 07 CA 846, 2008-Ohio-1526, at ¶ 24.

*KMV V Ltd. v. DeBolt*, 11th Dist. Portage No. 2010-P-0032, 2011-Ohio-525, ¶ 27; *see also State ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.,* 79 Ohio St.3d 216, 220, 680 N.E.2d 993 (1997) ("The mistake here is a mutual mistake of fact and law permitting rescission."); *Reed v. Triton Servs., Inc.*, 12th Dist. Clermont No. CA2018-07-049, 2019-Ohio-1587, ¶ 64 (recognizing that rescission may be proper when an agreement is based on a mutual mistake of law or fact because the mistake undermines the existence of a contract).

{¶ 37} As explained above, Civ.R. 60(B)(1) is a proper vehicle for rescission when a party to a dissolution decree seeks to vacate the decree based on a material mistake in the underlying separation agreement. We conclude that the trial court acted unreasonably, and thereby abused its discretion, in failing to find Anna entitled to relief under Civ.R. 60(B)(1) on the basis of a mutual mistake regarding her entitlement to spousal support along with child support. Due to that mistake, there was no valid

separation agreement on which a dissolution decree could have been based. Moreover, if the decree is vacated, Anna appears, at a minimum, to have a valid claim for spousal support. Anna also filed her motion within one year of the dissolution decree, nothing before us suggests that this was an unreasonable time, and the trial court made no such finding. Anna testified that she did not discover her right to spousal support until the issue arose during an outing with a friend and acquaintances in the spring of 2019.[5] (Tr. Vol. I at 117-118.)

{¶ 38} In opposition to our analysis, Nathan argues that Anna signed the separation agreement willingly and voluntarily. He stresses her admission at the hearing that she did not read everything in the agreement. He also asserts that Anna had a general understanding of the parties' assets and debts as well as his income. He argues that she cannot rely on her own failure to determine the value of known assets. He further asserts that she is responsible for the agreement she signed, regardless of whether she read or understood it. Finally, Nathan notes that he remarried shortly after the dissolution decree in reliance on it.

{¶ 39} With regard to "mistake" as it pertains to spousal support, Nathan faults Anna for accepting his alleged representation and not taking independent action to discover the truth. He cites *Reilley v. Richards,* 69 Ohio St.3d 352, 632 N.E.2d 507 (1994) for the proposition that even a mutual mistake will not justify rescission of a contract if the complaining party was negligent in not discovering the mistake. He also argues that Anna should not be permitted to rescind the separation agreement because she has obtained

---

[5] When Anna attempted to explain in more detail how the spousal-support issue arose and what she had learned, Nathan's counsel objected on the basis of hearsay.

substantial benefits from it. He draws an analogy to cases holding that a party who signs a release cannot attack its validity without tendering back any consideration received.

{¶ 40} Upon review, we agree with Nathan's arguments about Anna voluntarily accepting the terms of the separation agreement and having general knowledge of the parties' assets and liabilities. But those issues have no impact on Anna's spousal-support argument. She is not suggesting unawareness that the separation agreement omitted spousal support. Her argument concerns *the reason* the agreement omitted spousal support, namely the existence of a mutual mistake regarding her eligibility for it. The fact that Anna voluntarily entered into the agreement and accepted its terms does not undermine this argument.

{¶ 41} In the *Reilley* case cited by Nathan, the parties entered into a real-estate purchase contract. Following the transaction, the buyer sought rescission on the basis that a significant portion of the subject property was in a floodplain, which precluded him from building a home. The trial court granted rescission based on mutual mistake regarding the floodplain issue. The Tenth District reversed, reasoning that the buyer could have discovered the floodplain problem if he had hired an engineer. The Ohio Supreme Court reversed the Tenth District, finding rescission proper. It recognized that a party is entitled to rescission "where there is a mutual mistake as to a material part of the contract and where the complaining party is not negligent in failing to discover the mistake." *Reilley* at 352-353. The Ohio Supreme Court deemed the floodplain problem material to the contract and noted that neither party was aware of the problem at the time of contracting. Although the buyer was himself an attorney, the *Reilley* court noted that he had "no experience in real estate law and, thus, was an unsophisticated party at the time of the

transaction." *Id.* at 354. The Ohio Supreme Court also noted that the floodplain could not be seen by looking at the property. *Id.* Finally, the *Reilley* court found that the buyer was not negligent in failing to hire engineers to discover the floodplain issue. *Id.*

**{¶ 42}** Here the parties' mutual mistake regarding Anna's purportedly not being allowed to receive child support and spousal support was a material one. We also see no negligence on Anna's part. She testified below that she trusted Nathan and believed what he said about her being required to elect child support or spousal support. She explained: "I trusted everything he said. I mean we, we went into this as a friendly like separation. I had no—there was no, you know, I hate you, all of that kind of stuff, you know, that maybe some divorces go through. We said we wanted to keep things on a friendly level. We had four kids. We needed to be able to work together so I trusted everything that he told me." (Tr. Vol. I at 101.)

**{¶ 43}** The record demonstrates that Nathan took the lead in structuring the terms of the dissolution and that Anna trusted him and reasonably believed what he told her. Nothing suggests that Anna had any cause to question Nathan's representations. She had no experience in domestic-relations law and was an unsophisticated party in that regard. Absent any reason to question the veracity of what Nathan told her, we also see no negligence in Anna's failure to consult with an attorney about the issue.

**{¶ 44}** We note too that while Nathan's remarriage is a relevant consideration, remarriage does not preclude granting Civ.R. 60(B) relief, particularly where the non-moving party is the one who remarried. In *Whitman*, the Ohio Supreme Court reasoned that "while the remarriage of a party is a factor which may weigh against the granting of a Civ.R. 60(B) motion, it does not automatically prevent the court from finding that such

relief is appropriate under all of the circumstances." *Whitman* at 243. Here Nathan's remarriage less than one year after the dissolution decree does not preclude Anna from obtaining vacation of the decree on the basis of mutual mistake. The parties' mistake regarding Anna's entitlement to spousal support means that there was no meeting of the minds and no valid contract on which to base the dissolution decree. Under these circumstances, vacation of the decree is appropriate despite Nathan's remarriage.

{¶ 45} Finally, we are unpersuaded that Anna's receipt of benefits under the separation agreement precludes her from obtaining Civ.R. 60(B) relief. In support of his argument that Anna must "tender back" all benefits she received under the separation agreement before seeking Civ.R. 60(B) relief, Nathan cites case law involving the setting aside of releases on the basis of fraud in the inducement.

{¶ 46} We are unconvinced that case law involving the return of consideration paid for the release of a cause of action applies equally to dissolution decrees. In the case of a release, a party receives compensation in exchange for signing a release of legal claims. Here Nathan did not pay Anna any money in exchange for agreeing to forego spousal support or as consideration for agreeing to end the marriage. The parties' simply agreed on a division of their joint marital property and child support. If the dissolution decree is vacated, Anna does not "owe" Nathan the return of any money, which belonged to both of them while they were married. In the absence of a valid dissolution decree, all marital assets still would belong to them jointly, regardless of which party was holding the asset. In short, Nathan's analogy to cases involving releases is unworkable in the domestic-relations context, and we have not found any case applying a tender-back

requirement when a party seeks relief from a dissolution decree under Civ.R. 60(B).[6]

## III. Conclusion

**{¶ 47}** For the foregoing reasons, we sustain Anna's assignments of error insofar as she contends the trial court erred in failing to grant her relief under Civ.R. 60(B)(1) based on a mutual mistake regarding her entitlement to receive both child support and spousal support. The trial court's June 14, 2021 Decision and Judgment Entry is reversed, and the case is remanded with instructions for the trial court to vacate the parties' dissolution decree.

. . . . . . . . . . . . .


DONOVAN, J. and LEWIS, J., concur.


Copies sent to:

Robert M. Harrelson
William H. Harrelson, II
Thomas G. Eagle
Michelle M. Maciorowski
Hon. Timothy D. Wood

---

[6] Nathan also fails to address case law holding that a party is not required to tender back consideration before challenging the validity of a release on the basis of mutual mistake rather than fraud. *See Coburn v. Auto-Owners Ins. Co.*, 189 Ohio App.3d 322, 2010-Ohio-3327, 938 N.E.2d 400, ¶ 16 (10th Dist.) ("Courts generally do not require a tender of consideration when a release is set aside on the grounds of mutual mistake."); *Carnes v. Downing*, 3d Dist. Logan No. 8-2000-12, 2000 WL 1420279, *3-4 (Sept. 27, 2000); *Pizzino v. Lightning Rod Mut. Ins. Co.*, 93 Ohio App.3d 246, 638 N.E.2d 146 (1994). Therefore, to the extent that cases involving releases from liability could apply by analogy, Nathan has not shown how they help him in a case involving mutual mistake.